WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tiffany Marie Bogner, | No. CV-22-01908-PHX-DMF |
| Plaintiff, | |
| v. | **ORDER** |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Tiffany Marie Bogner's ("Plaintiff") application for disability insurance benefits under the Social Security Act ("Act"). On November 8, 2022, Plaintiff filed a Complaint with this Court, seeking review of the denial of benefits. (Doc. 1) The Court has reviewed Plaintiff's Opening Brief (Doc. 21), Defendant Commissioner's Answering Brief (Doc. 23), Plaintiff's Reply Brief (Doc. 24), and the administrative record (Docs. 19, 20, R.). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and with the parties' consent to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Docs. 6, 14) The Court now vacates the final decision of the Commissioner (R. at 25-39) and remands for further administrative proceedings.

## I.   BACKGROUND

On August 17, 2018, Plaintiff filed an application for Title II Disability Insurance Benefits, alleging disability beginning November 15, 2017. (R. at 150, 304) Plaintiff's application was denied initially on January 10, 2019 (R. at 104-24), and upon

1    reconsideration (R. at 127-45) Plaintiff subsequently requested a hearing, held on June 18,

2    2020 (R. at 71-103), and ALJ Dante Alegre issued a decision denying Plaintiff's

3    application on September 2, 2020 (R. at 150-61). Upon Plaintiff's request for review, the

4    Appeals Council remanded Plaintiff's case to the ALJ for further proceedings on January

5    4, 2021. (R. at 167-71) The Appeals Council ordered the ALJ to evaluate evidence from

6    Valleywise Medical, submitted on July 13, 2020; further consider Plaintiff's maximum

7    residual functional capacity ("RFC") and "provide rationale with specific references to

8    evidence of record"; further consider whether Plaintiff could perform past relevant work;

9    and obtain supplemental evidence from a vocational expert. (R. at 170-71)

10    Upon remand, ALJ Dante Alegre held a second hearing on June 10, 2021 (R. at 46-

11    70), and issued a new decision denying Plaintiff's application on September 9, 2021 (R. at

12    25-39). The Appeals Council denied Plaintiff's request for review, at which point the ALJ's

13    decision became final. (R. at 1-6) Following this unfavorable decision, Plaintiff filed the

14    present appeal.

15    After considering the medical evidence and opinions, the ALJ determined that

16    Plaintiff had not engaged in substantial gainful activity since November 15, 2017, the

17    alleged onset date. (R. at 29) The ALJ found that Plaintiff had the following severe

18    impairments: cervical, thoracic, and lumbar degenerative disc disease; obesity; bipolar

19    disorder; generalized anxiety disorder ("GAD"); post-traumatic stress disorder ("PTSD");

20    and bulimia nervosa. (R. at 30) Plaintiff did not have an impairment or combination of

21    impairments that met or equaled an impairment listed in 20 C.F.R. § 404, Subpart P,

22    Appendix 1. (R. at 30-33) In making this finding, the ALJ determined that Plaintiff's

23    mental impairments did not meet the paragraph B or C criteria. (*Id.*)

24    In assessing Plaintiff's RFC, the ALJ found that Plaintiff's symptom testimony was

25    not entirely consistent with the evidence of record. (R. at 33-36) The ALJ found persuasive

26    the opinions of the state agency medical consultants and consultative medical examiner,

27    but the ALJ found unpersuasive the opinions of Plaintiff's treating psychiatrist, Donald

28    Joseph Aubrey, MD; Plaintiff's treating psychiatric nurse practitioner, Katharine Kazaka,

- 2 -

1    NP; and Plaintiff's treating psychotherapist, Ann Warner, MAPC, LPC. (R. at 36-37)

2    Ultimately, the ALJ determined that Plaintiff had the RFC to perform medium work with

3    the following exceptions: Plaintiff could occasionally lift and carry 50 pounds, climb

4    ladders or scaffolds, kneel, crouch, crawl, and feel with the right arm; could frequently lift

5    and carry 25 pounds, climb ramps and stairs, and stoop; could stand and walk for 6 hours

6    in an 8-hour day; could sit for 6 hours in an 8-hour day; must avoid concentrated exposure

7    to hazards; and could carry out simple instructions for simple tasks with occasional contact

8    with coworkers and the public. (R. at 33) Relying on the testimony of a vocational expert,

9    the ALJ determined that Plaintiff could not perform past relevant work but could perform

10   jobs such as packager, assembler, and office helper. (R. at 37-39) Consequently, the ALJ

11   concluded that Plaintiff was not disabled. (R. at 39)

12   ## II.    LEGAL FRAMEWORK

13       A district court only reviews the issues raised by the party challenging an ALJ's

14   decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). If the court finds that

15   the ALJ's decision was not based on substantial evidence or was based on legal error, the

16   court may set aside the decision. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

17   Substantial evidence requires "more than a mere scintilla but less than a preponderance"

18   and should be enough evidence "as a reasonable mind might accept as adequate to support

19   a conclusion." *Id*. (*quoting Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). An

20   ALJ's decision should be upheld if "evidence is susceptible to more than one rational

21   interpretation," but a district court should "consider the entire record as a whole and may

22   not affirm simply by isolating a specific quantum of supporting evidence." *Id*. (quotations

23   and citations omitted).

24       In determining whether a claimant is disabled under the Act, the ALJ must follow a

25   five-step analysis. 20 C.F.R. § 404.1520(a). First, the ALJ must determine whether a

26   claimant is participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so,

27   the claimant is not disabled. *Id*. Second, the ALJ determines if a claimant has a "severe

28   medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). If

not, the claimant is not disabled. *Id.* Third, the ALJ determines whether the claimant's impairment meets or equals a listing in Appendix 1 of Subpart P of 20 C.F.R. § 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant disabled, and the inquiry ends. *Id*. If the ALJ must proceed to step four, the ALJ determines whether the claimant's RFC allows the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled. *Id*. If the ALJ must proceed to step five, the ALJ determines whether the claimant's RFC allows the claimant to perform other work. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id.*

## III.    ANALYSIS

Plaintiff raises two issues for the Court's consideration: (1) that the ALJ erred in rejecting the opinions of Plaintiff's treating providers Donald Aubrey, MD, and Katharine Kazaka, NP; and (2) that the ALJ erred in rejecting Plaintiff's symptom testimony. (Doc. 21 at 1) Plaintiff requests that the Court remand her case for payment of benefits or, in the alternative, remand for further proceedings. (*Id*. at 24-25) The Commissioner asks the Court to affirm or, if the Court finds error, to remand for further proceedings. (Doc. 23 at 7-9)

### A.    Medical Source Opinions

Plaintiff first argues that the ALJ erred in rejecting the opinions of her treating psychiatrist, Donald Aubrey, MD, and her treating psychiatric nurse practitioner, Katharine Kazaka, NP. (Doc. 21 at 12-20)

#### 1. *Legal Standard*

For disability benefits claims filed prior to March 27, 2017, Social Security Administration ("SSA") regulations classified medical opinion sources into three types: 1) treating physicians (who treat a claimant), 2) examining physicians (who examine but do not treat a claimant), and 3) non-examining physicians (who do not examine or treat a claimant). *Lester*, 81 F.3d at 830. An ALJ was instructed to give more weight to treating medical sources than non-examining sources due to a treating physician's heightened familiarity with a claimant's condition. 20 C.F.R. § 404.1527(a)(2). If the ALJ declined to

give controlling weight to a treating physician's contradicted opinion, the ALJ had to provide "specific and legitimate reasons supported by substantial evidence" for rejecting that source's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

For disability benefits claims filed after March 27, 2017, including the application in the present case[1], SSA regulations instruct an ALJ not to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c. Instead, an ALJ should determine the persuasiveness of each medical opinion using the following factors: 1) supportability, 2) consistency, 3) relationship with the claimant, 4) specialization, and 5) any other relevant factors. *Id*. The SSA has explained that supportability and consistency are the most important factors in evaluating an opinion's persuasiveness, and the ALJ must articulate how he considered both factors. *Id*.; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5853 (Jan. 18, 2017) (codified at 20 C.F.R. § 404).

In 2022, the Ninth Circuit held that the 2017 SSA regulations no longer require an ALJ to provide specific and legitimate reasons for rejecting a medical source opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Instead, an ALJ decision to discount a medical source opinion must be supported by substantial evidence. *Id.* As the Ninth Circuit explained, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792.

### 2. *Opinion of Donald Aubrey, MD*

Donald Aubrey, MD, Plaintiff's treating psychiatrist, completed a form titled "Medical Assessment of Claimant's Ability to Perform Work Related Activities (Mental)" on July 10, 2018. (R. at 567-68) In the assessment, Dr. Aubrey opined that Plaintiff's impairments would preclude an 8-hour work day. (R. at 567) Specifically, Dr. Aubrey opined that Plaintiff had a severe restriction in her ability to relate to others, a severe

---

[1] Plaintiff filed her application on August 17, 2018. (R. at 150)

deterioration in personal habits, a severe constriction of interests, and a moderately severe restriction in daily activities, including attending meetings, working around the house, and socializing. (*Id*.) Dr. Aubrey opined that Plaintiff had a severe limitation in responding appropriately to supervision and coworkers and responding to customary work pressures and that Plaintiff had a moderately severe limitation in performing simple tasks and understanding, carrying out, and remembering instructions. (*Id*.) Dr. Aubrey checked boxes that Plaintiff's limitations had not lasted or would not last for 12 months or longer; that Plaintiff's prescribed medications caused Plaintiff to have moderate side effects, adding that Plaintiff experienced sedation and impaired concentration; and that Plaintiff's psychiatric symptoms severely affected the sustainability of work pace. (R. at 568) In support of his opinion, Dr. Aubrey checked boxes that he had provided or supervised Plaintiff's treatment; had considered his treatment notes, records from other providers, mental status exams, and Plaintiff's response to treatment; and that Plaintiff's limitations resulted from objective findings documented by Dr. Aubrey or found elsewhere in Plaintiff's medical records. (*Id*.) Dr. Aubrey added that at the time of his opinion, Plaintiff was in an intensive outpatient program four days a week. (*Id*.)

### 3. Opinion of Katharine Kazaka, NP

Katharine Kazaka, NP, Plaintiff's treating psychiatric nurse practitioner, completed a form titled "Medical Assessment of Claimant's Ability to Perform Work Related Activities (Mental)" on February 20, 2020. (R. at 775-76) In the assessment, NP Kazaka opined that Plaintiff had impairments that would preclude an 8-hour work day. (R. at 775) Specifically, NP Kazaka opined that Plaintiff had a severe restriction in daily activities, such as attending meetings, working around the house, and socializing; had a severe constriction of interests; had a moderately severe impairment in her ability to relate to others; and had a moderately severe deterioration in personal habits. (*Id*.) NP Kazaka opined that Plaintiff was severely limited in responding appropriately to supervision and coworkers and in responding to customary work pressures and was moderately severely limited in understanding, carrying out, and remembering instructions and performing

simple tasks. (*Id.*) NP Kazaka checked boxes that Plaintiff's impairments would last for 12 months or longer; that prescribed medications caused moderate limitations, adding that Plaintiff experienced weight gain, impaired focus, and fatigue; and that Plaintiff's psychiatric symptoms severely affected the sustainability of work pace. (R. at 776) As support for her opinion, NP Kazaka checked boxes that NP Kazaka provided or supervised Plaintiff's treatment; considered Plaintiff's treatment notes, records from other providers, mental status exams, and Plaintiff's response to treatment; and provided an opinion based on objective findings documented by NP Kazaka or found elsewhere in Plaintiff's medical records. (*Id.*)

### 4.  *ALJ's Findings*

The ALJ stated that Dr. Aubrey and NP Kazaka opined that Plaintiff had moderately severe to severe impairments in every area of mental functioning. (R. at 36) The ALJ found Dr. Aubrey and NP Kazaka's opinions inconsistent and unpersuasive because although Plaintiff had mental restrictions, no objective examinations showed moderate or severe limitations. (*Id.*) Further, the ALJ found that Dr. Aubrey and NP Kazaka's opinions appeared to be based on Plaintiff's subjective complaints. (*Id.*) In support of this finding, the ALJ found that Plaintiff had periods of increased and decreased psychiatric symptoms and continued struggles with bulimia, yet Plaintiff also reported that she could independently dress, bathe, prepare meals, and perform household chores. (R. at 37) Although Plaintiff was observed as anxious and depressed on occasions, the ALJ found that Plaintiff was also observed as calm and cooperative with adequate grooming, good eye contact, appropriate speech, linear thought processes, adequate memory, good concentration, and a normal fund of knowledge. (*Id.*) Although Plaintiff reported difficulty socializing with others, dissociation, avoidance of the public, difficulty functioning due to past trauma, reliving past traumatic events, racing thoughts, and difficulty concentrating, the ALJ found that Plaintiff could shop, attend doctor's appointments, drive, and work part time. (*Id.*) Specifically, the ALJ stated that Plaintiff could work at several stores including Lowe's and Sprouts and started a full-time job at a call center in April 2021. (*Id.*) Further,

1   the ALJ found that Plaintiff could handle a savings and checking account, prepare meals,

2   drive, care for pets, and shop for groceries. (*Id.*) The ALJ also found that Plaintiff had

3   stable treatment for her complaints, had normal mental status examinations, was calm and

4   cooperative, had normal thought process and content, and was doing better, including

5   displaying normal mood. (*Id.*) As such, the ALJ found that there were "no indications of

6   severe restrictions from [Plaintiff's] mood in these records." (*Id.*)[2]

7               5. *Discussion*

8               The ALJ did not provide sufficient substantial evidence to reject the opinions of Dr.

9   Aubrey and NP Kazaka. At the outset, the ALJ failed to address the supportability of Dr.

10  Aubrey and NP Kazaka's opinions. *See* 20 C.F.R. 404.1520c. Although Dr. Aubrey and

11  NP Kazaka's treatment notes are among the record evidence cited in the ALJ's opinion,

12  the ALJ failed to discuss how Dr. Aubrey and NP Kazaka's treatment notes supported or

13  did not support each provider's opinion.

14              The ALJ also asserted that Dr. Aubrey and NP Kazaka's opinions appeared to be

15  based on Plaintiff's complaints, but an ALJ typically cannot reject a treating physician's

16  opinion on the basis that it does not contain explanations or is based in part on a claimant's

17  subjective complaints. *Smolen*, 80 F.3d 1273, 1288 (9th Cir. 1996). Under the former SSA

18  regulations, an ALJ could "reject a treating physician's opinion if it is based 'to a large

19  extent' on a claimant's self-reports that have been properly discounted as incredible[,]"

20  *Tommasetti*, 533 F.3d at 1041, but there is no indication that Dr. Aubrey and NP Kazaka's

21  opinions were largely based on Plaintiff's self-reports. To the contrary, Dr. Aubrey and NP

22  Kazaka both stated that they provided or supervised Plaintiff's treatment, considered

23  Plaintiff's treatment notes, records from other providers, mental status exams, and

24  Plaintiff's response to treatment, and provided opinions based on their own, documented

25

26  [2] Defendant asserts that the ALJ properly rejected Dr. Aubrey and NP Kazaka's opinions
    because each opinion was a check-box form with "extreme limitations[,]" but the ALJ did
27  not reject Dr. Aubrey and NP Kazaka's opinions for this reason. (Doc. 23 at 3-4) The Court
    may not affirm an ALJ's opinion based on a ground on which the ALJ did not rely. *Trevizo*
28  *v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

1   objective findings or on findings included elsewhere in Plaintiff's medical records. (*See* R.

2   at 568, 776) Even if Dr. Aubrey and NP Kazaka had relied in part on Plaintiff's self-reports,

3   as discussed *infra*, Plaintiff's self-reports were not properly discounted as incredible.

4          The ALJ next acknowledged that Plaintiff had alternating periods of increased and

5   decreased symptoms. However, the Ninth Circuit has recognized that mental impairment

6   symptoms typically wax and wane and that some improvement does not negate a claimant's

7   impairments overall. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). The ALJ

8   erred in discounting Dr. Aubrey and NP Kazaka's opinions based on Plaintiff's variable

9   periods of symptoms, especially given that the ALJ's record citations suggest that

10  Plaintiff's symptoms did not continuously improve. For instance, the ALJ stated that

11  Plaintiff was doing better and had improved, including that Plaintiff had normal mood and

12  was feeling better, but the records the ALJ cited also reflect that Plaintiff often had

13  dysphoric, depressed, anxious, or indifferent mood and that Plaintiff continued to

14  experience symptoms of her impairments. (*See* R. at 717, 719-20, 723, 726, 785, 787, 790,

15  792, 795, 797, 809, 814, 818-19, 823-24, 834) Contrary to the ALJ's assertion, Plaintiff

16  did not steadily improve, feel better, or have a continually normal mood.

17         The ALJ also stated that Plaintiff had stable treatment and normal mental status

18  examinations, including that Plaintiff was calm and cooperative and had adequate

19  grooming, good eye contact, appropriate speech, linear thought processes, adequate

20  memory, good concentration, and a normal fund of knowledge. (R. at 37) However, aside

21  from Plaintiff's observed good concentration, the ALJ did not explain, nor is it apparent,

22  how these observations of cognitive functioning negated Dr. Aubrey and NP Kazaka's

23  opined limitations. As the Ninth Circuit has stated and Plaintiff correctly points out,

24  cognitive functioning is not necessarily inconsistent with allegations of depression and

25  anxiety. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

26         Finally, although the ALJ states that Plaintiff was able to handle a savings and

27  checking account, prepare meals, drive, care for pets, shop for groceries, and work at

28  various jobs, the ALJ neglects to mention that Plaintiff was unable to maintain her

1   employment at multiple employers and was written up for numerous absences at her most
2   recent job. (*See* R. at 52-59) The ALJ also appears to have discredited Plaintiff's own
3   testimony, as opposed to the treating providers' opinions, with citations to Plaintiff's
4   reported activities. (R. at 37) Even so, the activities the ALJ cited do not necessarily negate
5   Dr. Aubrey and NP Kazaka's opinions, nor does the ALJ explain how Plaintiff's activities
6   contradict her treating providers' opinions. For instance, Plaintiff's reported ability to
7   dress, bathe, prepare some meals, and perform some household chores does not necessarily
8   contradict the opinions of Dr. Aubrey and NP Kazaka that Plaintiff had moderately severe
9   to severe limitations in daily activities, socializing, and in work settings. *See Reddick v.*
10  *Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("claimants should not be penalized for
11  attempting to lead normal lives in the face of their limitations"); *Ghanim*, 763 F.3d at 1165
12  (no indication that plaintiff's home activities were transferable to work or conflicted with
13  reports of social interactions).

14      In sum, the ALJ did not provide substantial evidence to reject the opinions of Dr.
15  Aubrey and NP Kazaka. In doing so, the ALJ erred.

16      **B.      Plaintiff's Symptom Testimony**

17      Plaintiff next argues that the ALJ erred in failing to provide specific, clear, and
18  convincing reasons to reject Plaintiff's symptom testimony. (Doc. 21 at 20-24)

19          *1. Legal Standard*

20      When evaluating subjective symptom testimony, an ALJ must first find objective
21  medical evidence demonstrating an impairment that could reasonably cause a claimant's
22  symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996); 20 C.F.R. §
23  505.1529(a)-(b). A claimant's subjective testimony alone will not establish a disability,
24  and an ALJ will determine whether the claimant's alleged limitations are consistent with
25  medical sources. 20 C.F.R. § 404.1529(a). Once the claimant has shown such an
26  impairment, if there is no evidence of malingering, the ALJ may reject a claimant's
27  symptom testimony only if he offers "specific findings stating clear and convincing reasons
28  for doing so." *Smolen* at 1283-84. The specific, clear, and convincing reasons must be

supported by evidence in the record. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015). Although an ALJ may consider the objective medical evidence, the ALJ may not use a lack of such evidence as the sole basis to discount a claimant's testimony. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); 20 C.F.R. § 404.1529(c)(2). An ALJ may also consider a "claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); 20 C.F.R. § 404.1529(c)(3). If "the evidence is susceptible to more than one rational interpretation[,]" the Court will uphold the ALJ's conclusion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (superseded by statute on other grounds).

### 2.  *Plaintiff's Testimony*

At the second ALJ hearing in June 2021, Plaintiff testified that she was working from home full-time at a call center but had been written up for calling out several times due to depression. (R. at 52-53) Plaintiff testified that she had tried various different jobs, including sales at Lowe's, waitressing at various restaurants, admissions counseling at University of Phoenix, working in the bakery at Costco, stocking at Target, working with medical records at a doctor's office, as a leasing consultant for an apartment complex, and working for DoorDash. (R. at 54-55) Plaintiff testified that in 2020 she tried working as a server at a restaurant for a couple of weeks but that the work was "just getting too hard like depressed wise" and was physically challenging for Plaintiff. (R. at 56) Plaintiff also testified that while attempting to work for DoorDash, she was having "a lot of emotional problems," such as crying, breaking down, and having panic attacks. (R. at 58) Plaintiff testified that she easily became overwhelmed and affected by stress, causing her to become depressed and spiral into suicidal thoughts; that working and stress caused a "roller coaster of up and down"; and that working for DoorDash was overwhelming for these reasons. (*Id.*) Plaintiff testified that she had been written up at her current position for calling out five times, due to Plaintiff being extremely depressed and suicidal; that if she missed one more day, she would receive final written warning; and that if she missed another day after

that, she would be terminated. (R. at 59) Since the first ALJ hearing, Plaintiff testified that her depression was a "tiny bit better but not by much" since Plaintiff still struggled to get out of bed, function, do daily chores, and take care of hygiene. (*Id.*) Plaintiff then clarified that her depression was "pretty close to the same." (*Id.*) Because her depression was a bit better, Plaintiff had attempted to work at a sedentary job. (*Id.*) Plaintiff also testified that since the first ALJ hearing, she was continuously in therapy, was seeing a nurse practitioner in psychiatry or a psychiatrist every month or every three months, and was participating in EMDR treatment and DBT therapy. (R. at 60) As for Plaintiff's absences at work due to suicidal thoughts, Plaintiff testified that she went to her mother's house so she wouldn't be alone, in case she needed to be taken to inpatient treatment, and to make sure that she didn't harm herself. (R. at 60-61) Plaintiff testified that she struggled with suicidal thoughts at least once a month, constantly struggled with fatigue and never felt rested, always felt like she had brain fog, and laid in bed any time she had breaks during the day. (R. at 61-62) Plaintiff testified that she had no energy, would lay in bed and sleep all day, had difficulty functioning and doing chores, and that on work days she would lay down for at least two hours a day. (R. at 62-63) Plaintiff acknowledged that she was seeing a new psychiatrist who made changes to Plaintiff's medication, resulting in increased nighttime anxiety and an upset stomach as a side effect. (R. at 63-64)

In her function report, completed in August 2018, Plaintiff testified that she suffered from severe depression, anxiety, and PTSD, causing panic attacks, difficulty concentrating and retaining information, dissociation while interacting with others, debilitating bipolar depression, an inability to eat, sleep, or interact with others, and an inability to shower or sleep for days. (R. at 357) Plaintiff stated that she attempted one small household task per day, attending therapy appointments once or twice a week, and tried to visit the grocery store once a week. (R. at 358) Plaintiff stated that she fed cats and dogs, could no longer be in public situations and interact with others, either went days without sleeping or could not get out of bed, and was unable to care for herself when her depression was bad. (*Id.*) Plaintiff needed reminders to take medications, could make small meals depending on her

mental stability but could no longer make full meals, could perform household tasks once a week for up to 15 minutes, went outside twice a week, could drive, could shop for groceries in stores or on the computer, could count change, handle a savings account, and use a checkbook, but did not have any hobbies. (R. at 359-61) Plaintiff stated that she visited with others in person twice a month and through text messages every few days, regularly went to the grocery store, therapy, and doctor's appointments, but rarely went out in public, did not attend activities involving large groups of people, and communicated little with friends and family. (R. at 361-62) Plaintiff stated that she had difficulty lifting, standing, walking, with memory and concentration, completing tasks, understanding, and following instructions. (R. at 362) Plaintiff stated that she could lift up to 20 pounds, walk up to 30 minutes with breaks, could not stand in place longer than 10-15 minutes, and could pay attention for two to three minutes. (*Id.*) Plaintiff further stated that she did not handle stress well because stress increased her anxiety and depression, and that she went to inpatient treatment due to severe depression. (R. at 363) As for side effects from her medications, Plaintiff stated that she had trouble sleeping, drowsiness, upset stomach, restlessness, and weight gain. (R. at 364)

### 3. ALJ's Findings

The ALJ found that although Plaintiff's medically determinable impairments could reasonably cause some of Plaintiff's alleged symptoms, Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence of record. (R. at 34) In doing so, the ALJ addressed the objective medical findings, Plaintiff's daily activities, and Plaintiff's treatment.

As for Plaintiff's mental impairments, the ALJ found that "the longitudinal mental health record fails to establish that [Plaintiff's] symptoms are work preclusive." (R. at 35)[3] Although Plaintiff had symptoms due to past trauma, the ALJ found that Plaintiff's

---

[3] Although the ALJ considered Plaintiff's physical impairments, Plaintiff states that "the main impairments that kept [Plaintiff] from full-time competitive employment, were her mental impairments, and the mental impairments are the focus and basis for this appeal." (Doc. 21 at 22, footnote 6) The Court therefore addresses the ALJ's findings as to Plaintiff's mental impairments only.

symptoms were stable on medication. (*Id*.) The ALJ found that Plaintiff suffered from mood instability, depression, suicidal ideation, disordered eating, difficulty sleeping and concentrating, fatigue, racing thoughts, recurrent distressing memories, reliving traumatic events, difficulty with memory, and detachment from feeling and recognized that Plaintiff reported a significant history of childhood and adult abuse. (*Id*.) The ALJ found that Plaintiff was psychiatrically hospitalized from April 21, 2018, to May 21, 2018, and that upon discharge, Plaintiff was to work on maintaining a healthier diet and increase physical activity. (*Id*.) The ALJ found that Plaintiff treated her symptoms with psychotropic medication, individual and group counseling, and 12 step meetings, although Plaintiff unsuccessfully tried using THC for PTSD. (*Id*.) The ALJ recognized that Plaintiff had periods of increased and decreased psychiatric symptoms, as well as continued struggles with bulimia, yet Plaintiff also reported that she could independently dress, bathe, prepare meals, and perform household chores. (*Id*.) Although Plaintiff was occasionally observed to be anxious and depressed, the ALJ found that Plaintiff also was observed to be calm and cooperative with adequate grooming, good eye contact, appropriate speech, linear thought processes, adequate memory, good concentration, and a normal fund of knowledge. (*Id*.) Although Plaintiff reported difficulty socializing, dissociation, avoidance of the public, difficulty functioning due to past trauma, reliving prior traumatic events, racing thoughts, and difficulty concentrating, the ALJ also found that Plaintiff could shop, attend doctor's appointments, drive, and work part-time or full-time at stores and a call center. (*Id*.) Further, the ALJ found that Plaintiff could handle a savings and checking account, prepare meals, drive, care for pets, and shop for groceries. (*Id*.) Because Plaintiff had some difficulty interacting with others and in concentrating, persisting, and maintaining pace, the ALJ determined that Plaintiff had a moderate limitation in both areas of functioning. (*Id*.) Moreover, the ALJ found that Plaintiff had stable treatment for her complaints and normal mental status examination findings, including that Plaintiff was calm, cooperative, and had normal thought process and content. (R. at 36-37) The ALJ also determined that the evidence of record showed no indications of severe restrictions from Plaintiff's mood,

1  that Plaintiff's counseling records showed that she was doing better and had improved, and

2  that Plaintiff's objective exams showed normal mood. (*Id*.) In sum, the ALJ determined

3  that treatment notes showed that Plaintiff responded well to conservative treatment despite

4  Plaintiff's alleged continued symptoms. (*Id*.)

5                       *4.  Discussion*

6          The ALJ did not provide clear and convincing reasons supported by substantial

7  evidence to discount Plaintiff's symptom testimony. As discussed *supra*, the ALJ

8  incorrectly asserted that Plaintiff had normal mood, was feeling better, and was improved.

9  To the contrary, in the exhibits the ALJ cited, Plaintiff was often observed to have a

10  depressed, dysphoric, anxious, or indifferent mood. (*See* R. at 717, 719-20, 723, 726, 785,

11  787, 790, 792, 795, 797, 809, 814, 818-19, 823-24, 834) Despite the ALJ's assertion that

12  Plaintiff was observed to be calm and cooperative, with adequate grooming, good eye

13  contact, appropriate speech, linear thought processes, adequate memory, good

14  concentration, and a normal fund of knowledge, in contrast to providers occasionally

15  observing Plaintiff as anxious and depressed, cognitive status findings are insufficient to

16  discount Plaintiff's allegations of depression and anxiety symptoms. *See Ghanim*, 763 F.3d

17  at 1164 (where record as a whole showed occasional improvement but frequent nightmares,

18  hallucinations, social anxiety, sleeping trouble, and hopelessness, observations of cognitive

19  functioning did not contradict plaintiff's reported symptoms of depression and social

20  anxiety); *see also Morris v. Berryhill*, 358 F.Supp.3d 875, 882-83 (D. Ariz. 2019)

21  (cognitive functioning did not contradict schizoaffective disorder and depressive disorder).

22  Because Plaintiff's symptoms arise from depression, anxiety, PTSD, and bipolar disorder,

23  not from a cognitive impairment, Plaintiff's intact cognitive functioning is not a clear and

24  convincing reason to discount Plaintiff's symptom testimony. Especially notable, as in

25  *Ghanim*, the record reflects that Plaintiff continued to experience frequent symptoms,

26  despite some improved periods, as discussed *infra*.

27          Further, although the ALJ acknowledged that Plaintiff had periods of increased and

28  decreased symptoms, the Ninth Circuit has recognized that mental health impairments may

cycle through periods of increased and decreased symptoms and that an ALJ may not pick out instances of improvement to conclude that a claimant is capable of working. *Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."); *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001) (some improvement in patient's severe panic attacks, anxiety, and depression did not mean that symptoms would not affect the patient's function at work). Here, the ALJ's citations to the record reflect that Plaintiff occasionally reported some improvement, yet Plaintiff also continued to experience increased symptoms over the course of years. (*See, e.g.,* R. at 540, 558, 596-600, 620, 720, 723, 726-28, 780, 785, 790, 819, 823) In finding that Plaintiff had stabilized from treatment, normal mental exams, and overall improvement, the ALJ erred.

As for the ALJ's discussion of Plaintiff's treatment, including psychotropic medication, counseling, and 12 step meetings, the ALJ did not show that Plaintiff's symptoms were controlled with treatment or stable on medication. To the contrary, the ALJ recognized that Plaintiff unsuccessfully tried treating her PTSD with THC and that Plaintiff reported and displayed symptoms of her impairments. (R. at 35-36) In this respect, the ALJ erred, as there is no indication that Plaintiff's treatment controlled her symptoms or provided "lasting relief." *Lopez v. Colvin*, 194 F.Supp.3d 903, 911 (D. Ariz. 2016). As Plaintiff points out, her treating providers continually prescribed new medications, discontinued other medications, and changed Plaintiff's treatment plan in response to her continued symptoms. (*See, e.g.,* R. at 596-600, 622, 632, 717, 721, 786, 791, 826) Moreover, despite the ALJ's assertion that Plaintiff was "generally stable on medication" (R. at 35), "a condition can be stable but disabling." *Petty v. Astrue*, 550 F.Supp.2d 1089, 1099 (D. Ariz. 2008). Given Plaintiff's periods of increased and decreased symptoms, the record here does not reflect that Plaintiff's symptoms were stable and improved on medication.

Finally, the ALJ discounted Plaintiff's testimony due to Plaintiff's reported ability to independently dress, bathe, shop for groceries, prepare meals, drive, attend doctor's appointments, and work part-time. (R. at 35-36) The Ninth Circuit has recognized that ALJs must be careful in concluding that daily activities such as cooking and cleaning are inconsistent with a claimant's testimony, as claimants may have assistance and flexibility in scheduling at home. *Garrison*, 759 F.3d at 1016. A claimant "should not be penalized for attempting to lead [a] normal li[fe] in the face of [her] limitations[.]" *Reddick*, 157 F.3d at 722. Daily activities may nonetheless support an adverse credibility finding if an ALJ sets forth "specific findings" that "a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Ghanim*, 763 F.3d at 1165 (no indication that plaintiff's home activities were transferable to work or conflicted with reports of social interactions). The ALJ did not make such findings here. Moreover, Plaintiff's ability to independently bathe, dress, buy groceries, prepare meals, drive, and attend doctor's appointments does not conflict with Plaintiff's testimony that she could make small meals, had difficulty socializing, and sometimes did not shower or leave her home during episodes of increased symptoms.

Regarding the ALJ's statement that Plaintiff was able to work full- or part-time, Plaintiff explained in her testimony that she was unable to maintain employment at her part-time jobs due to her symptoms and that she had been written up for absences due to calling out from her most recent full-time job due to her mental health symptoms. (R. at 52-59) Brief, unsuccessful attempts to work do not establish that a claimant is not disabled; instead, the Ninth Circuit has stated that "evidence that a claimant tried to work and failed actually *supported* his allegations of disabling pain." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007) (collecting cases). Plaintiff's attempts to work, in light of her testimony that her symptoms precluded her from maintaining past part-time employment, were not clear and convincing reasons for the ALJ to discount Plaintiff's symptom testimony.

1       In sum, the ALJ failed to provide clear and convincing reasons supported by

2   substantial evidence to reject Plaintiff's symptom testimony.

3   **IV.   CREDIT-AS-TRUE RULE**

4       Plaintiff argues that the ALJ's errors require this Court to apply the credit-as-true

5   rule and remand her case for computation of benefits. (Doc. 21 at 24-25) Although the

6   ordinary remedy for reversible error is to remand the case for further administrative

7   proceedings, the credit-as-true rule may apply in rare circumstances where three conditions

8   are present. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). First, the record must

9   be fully developed, and further administrative proceedings would not be useful to resolve

10  ambiguities or conflicts. *Id.; Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101

11  (9th Cir. 2014). Second, the ALJ must have failed to give "legally sufficient reasons for

12  rejecting evidence," including subjective testimony and medical opinions. *Id.* Third, if the

13  discounted or rejected evidence was credited as true, the ALJ would be required to find

14  that the claimant is disabled. *Id.* If all three conditions are met, the Court must "determine

15  whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome

16  of [the] proceeding[.]" *Treichler*, 775 F.3d at 1101 (internal citations omitted). Even if all

17  three conditions of the credit-as-true rule are met, the Court may remand for further

18  proceedings "when the record as a whole creates serious doubt as to whether the claimant

19  is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 at 1021.

20      Although the ALJ failed to properly evaluate Plaintiff's testimony and Dr. Aubrey

21  and NP Kazaka's opinions, further administrative proceedings would be useful to resolve

22  ambiguities or conflicts, to further evaluate Dr. Aubrey and NP Kazaka's opinions, and to

23  further consider Plaintiff's symptom testimony. As such, the credit-as-true rule does not

24  apply.

25  **V.   CONCLUSION**

26      The ALJ failed to support the ALJ's rejection of the opinions of Donald Aubrey,

27  MD, and Katharine Kazaka, NP, with substantial evidence and failed to provide clear and

28  convincing reasons supported by substantial evidence to reject Plaintiff's symptom

testimony. The Court therefore vacates the final decision of the Commissioner (R. at 25-39) and remands for further administrative proceedings.

Accordingly,

**IT IS ORDERED** that the September 9, 2021, decision of the ALJ (R. at 25-39) is reversed.

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for further administrative proceedings.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment consistent with this Order and close this case.

Dated this 25th day of July, 2023.

Honorable Deborah M. Fine
United States Magistrate Judge

- 19 -